**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DIA GONSALVES,** ) | |
| ) | |
| ) | Civil Action No.: |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **GARY GENSLER, CHAIRPERSON,** ) | **Jury Trial Demanded** |
| **SECURITIES AND** ) | |
| **EXCHANGE COMMISSION,** ) | |
| 100 F St., NE ) | |
| WASHINGTON, DC 20549 ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Dia Gonsalves ("Plaintiff"), by and through her undersigned counsel, hereby complains

of Defendant, the Securities and Exchange Commission ("Defendant" or "SEC"), as follows:

## PRELIMINARY STATEMENT

1.    Ms. Gonsalves brings this action against Defendant for violations of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII").

2.    Ms. Gonsalves is an African American female. She has been an employee of the SEC

from July 9, 2016 through the present date.

3.    Before Ms. Gonsalves joined the SEC as a supervisory employee, she had been a

federal employee for 28 years; she had successfully served as a manager for

approximately 10 of those years. She had never been issued a disciplinary action, and

she always received Outstanding performance ratings and awards for her

performance.

4.     Defendant, particularly its Office of Human Resources (OHR), has a documented history of discriminating against its employees who are minorities, particularly African Americans, as reported in a CNBC article entitled, "SEC Probing Alleged Racial Discrimination" that was published on February 25, 2011.

5.     Ms. Gonsalves experienced this discrimination when she began working in OHR in 2016. As a result, she filed an informal complaint of discrimination with Defendant's Office of Equal Employment Opportunity (OEEO) in or around June 2019, alleging that her then-managers subjected her to a hostile work environment on the bases of her race, sex, age, and reprisal for prior protected activity. On or around September 30, 2019, Ms. Gonsalves filed a formal complaint of discrimination regarding the same.

6.     From 2017 – 2020, Ms. Gonsalves also experienced sexual harassment at the hands of her colleagues and frequently observed them, and her former manager, drinking alcohol in the office and at bars during work hours. However, she did not include either of those claims in the EEO complaint she filed in 2019 because she was afraid of swift reprisal, up to and including removal from federal service.

7.     After lengthy and contentious proceedings before an Administrative Judge (AJ) at the Equal Employment Opportunity Commission (EEOC), Ms. Gonsalves withdrew her hearing request and requested a Final Agency Decision, which Defendant issued on May 31, 2022, finding no discrimination.

8.     During the pendency of Ms. Gonsalves's complaint, Defendant began retaliating against her for participating in those protected activities. For example, starting in 2020, Defendant accused Ms. Gonsalves of harassment without evidence; assigned staff

members to her who were known throughout the Agency as being disgruntled, and having performance and conduct issues; and refusing to give Ms. Gonsalves the resources she needed to perform her job.

9.    However, Defendant's retaliatory efforts significantly increased after Ms. Gonsalves's complaint was closed in May 2022.  Defendant made her the subject of an unjustified administrative investigation without telling her the allegations that were made against her. Defendant removed major functions from Ms. Gonsalves, despite the fact that she successfully performed them. Defendant removed employees and contractors from Ms. Gonsalves's supervision. Defendant removed Ms. Gonsalves from her position in management, despite the fact that Ms. Gonsalves successfully performed the job.

10.   Defendant continues to retaliate against Ms. Gonsalves by abusing its supervisory authority and directing her to delete evidence of her discrimination complaint; requiring her to perform the duties of the staff members she used to manage, and report on the status of those assignments to those staff members although they no longer perform the work; and manufacturing performance and conduct deficiencies to support additional unwarranted disciplinary actions against her.

## PARTIES

11.   Plaintiff is a resident of Upper Marlboro, Maryland.

12.   Gary Gensler, Chairperson for the Securities and Exchange Commission, is named in his official capacity as the Defendant that currently employs Ms. Gonsalves.

## JURISDICTION AND VENUE

13.   This Court has federal question jurisdiction under 28 U.S.C. § 1331 and pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

14.   Venue is proper in this judicial district because Defendant is located here and the unlawful employment practices giving rise to this action were committed and occurred in this District.

## ADMINISTRATIVE EXHAUSTION

15.   On or around June 19, 2023, Ms. Gonsalves contacted an EEO Counselor to file an informal complaint of discrimination. She timely filed a formal complaint with Defendant's OEEO on August 3, 2023. 180 days have passed since Ms. Gonsalves initially filed the formal complaint, and Defendant has not yet completed its investigation or issued the Report of Investigation to Ms. Gonsalves.

16.   Ms. Gonsalves has exhausted her administrative remedies by filing this lawsuit within the time prescribed by the U.S. Equal Employment Opportunity Commission's ("EEOC") regulations. *See* § 29 C.F.R. 1614.108(g).

## STATEMENT OF FACTS

17.   Ms. Gonsalves identifies as an African American female.

18.   On or about July 9, 2016, Defendant hired Ms. Gonsalves as a Branch Chief (Supervisory Management and Program Analyst, SK-15) in the Employment Practices Group (EPG), Office of Human Resources (OHR). Travis Elliott (Caucasian male), Assistant Director, EPG, served as Ms. Gonsalves's first-line supervisor from July 9, 2016 – March 16, 2020, when OHR was reorganized. Lacey Dingman (Caucasian female) served as the Director, OHR and Ms. Gonsalves's second line supervisor from July 9, 2016 – Spring 2018 when Ms. Dingman was reassigned to a different position within the Agency. James McNamara (Caucasian male), Director[1],

---

[1] Mr. McNamara also served as the Deputy Director, OHR during this period.

OHR, served as Ms. Gonsalves's second line supervisor from Spring 2018 – October 2022.

19.     After OHR was reorganized on or around March 16, 2020, Ms. Gonsalves was reassigned from EPG/OHR to Total Rewards Group (TRG)/OHR. Ms. Gonsalves became the Branch Chief, Performance, Reasonable Accommodation, and Worklife, TRG, OHR. In this position, Ms. Gonsalves was responsible for managing employees; managing budget, operations, and building automation for all functions associated with performance management; reasonable and religious accommodation; interpreting services/contract for deaf employees; temporary medical telework; and work life programs.

20.     Trinette Smith (African American female) became Ms. Gonsalves's supervisor, and served in that position until Ms. Smith retired on or around January 31, 2023. Mr. McNamara continued to serve as Ms. Gonsalves's second-line supervisor until October 2022 when he left the Agency. Mark Reinhold (Caucasian male) became Ms. Gonsalves's second line supervisor at that time when he assumed the position of Acting Director, OHR. Mr. Reinhold was named the Director, OHR in February 2023, and remained Ms. Gonsalves's second-line supervisor.

21.     Jacqueline Wilson (African American female) served as the Acting Assistant Director, TRG and Ms. Gonsalves's first-line supervisor from February 1, 2023 until July 14, 2023, when Defendant hired Lauren Colon (Caucasian female) to serve as the Assistant Director, TRG. Ms. Colon served as Ms. Gonsalves's first-line supervisor until January 19, 2024, when Mr. Reinhold removed Ms. Gonsalves from her supervisory position and demoted her to a staff-level position.

22.     Beginning on January 19, 2024, Shalisha Bazemore (African American female),

        Deputy Director, OHR, began to serve as Ms. Gonsalves's first-line supervisor. Mr.

        Reinhold still serves as Ms. Gonsalves's second-line supervisor. Mr. Elliott reports

        directly to Mr. Reinhold and serves as his legal advisor on human resources issues.

*Ms. Gonsalves's Former Manager & Colleagues Drank Alcohol in the Office and at Bars during*

*Work Hours*

23.     Beginning in or around 2018 – 2020, Ms. Gonsalves witnessed her then-manager, Mr.

        Elliott, frequently and repeatedly leaving the workplace to drink alcohol with his

        subordinate employees at local bars during work hours. Ms. Gonsalves also observed

        Mr. Elliott and his subordinate employees return to the office after drinking at the bar

        together during work hours. Mr. Elliott also allowed his subordinate employees to

        drink alcohol in their offices during work hours.

24.     Ms. Gonsalves is aware of other employees who also observed this behavior.

25.     At least three of the Caucasian males who participated in this conduct have been

        promoted within the Agency, one of whom now works for and advises the Chair of

        the Agency.

26.     The sole African American male employee who participated in this conduct has been

        unable to obtain a promotion. Likewise, Ms. Gonsalves has been unable to obtain a

        promotion, and has now been demoted without justification.

27.     On May 3, 2018, Mr. Elliott forced Ms. Gonsalves to attend a "manager" meeting at a

        local bar. Mr. Elliott abused his authority as Ms. Gonsalves's manager to bully her

        into drinking alcohol during this meeting. Ms. Gonsalves is not a regular or heavy

        drinker, and became sick and almost passed out in the restroom as a result of drinking

alcohol that day.

28.    On February 25, 2020, Mr. Elliott arrived at work intoxicated and remained in the

office while performing official duties in his inebriated state.

29.    Ms. Gonsalves is aware of other employees who also observed this behavior.

_Ms. Gonsalves's Male Colleagues Sexually Harassed Her from 2018 – 2020_

30.    From 2017 – 2019, Ms. Gonsalves's then-colleague, Peter Gimbrere, sexually

harassed her. Mr. Gimbrere made almost daily comments about his desire to have

sexual intercourse with Ms. Gonsalves. Mr. Gimbrere told Ms. Gonsalves that his

wife would not mind if he had sexual relations with Ms. Gonsalves.

31.    Mr. Gimbrere often raised the topic of sex in Ms. Gonsalves's presence (_e.g._, asking

if she had been "having wild sex" with men of her choice, making sexual innuendos

about her, asking how often she dates, etc.).

32.    In July 2018, Mr. Gimbrere made a sexually explicit comment to Ms. Gonsalves in

the presence of Mr. Elliott and Stephen Brown (Assistant Director, Talent Acquisition

Group). Neither member of Agency leadership reprimanded Mr. Gimbrere nor told

him his comment was inappropriate.

33.    At the time, Mr. Gimbrere reported to Mr. Elliott, who hired Mr. Gimbrere and is his

friend. Mr. Gimbrere has since been promoted and served in the Chair's office under

former Chair, Jay Clayton. After a change in administration shortly after Chair

Gensler joined the Agency, Mr. Gimbrere now works directly for Defendant's Chief

Operating Officer (COO), Kenneth Johnson.

34.    On March 14, 2019, Ms. Gonsalves's then-colleague, Ryan Wedlund, sexually

harassed Ms. Gonsalves when he hugged her and grabbed her left buttock at an

Agency-sponsored farewell party for an employee who was leaving OHR. Mr.

Wedlund has since been promoted within OHR. Mr. Wedlund is a friend of Mr.

Elliott.

*Ms. Gonsalves Engaged in Prior Protected Activity in June 2019*

35.    In or around June 2019, Ms. Gonsalves contacted the SEC's OEEO to file an informal

complaint of discrimination alleging that her managers at the time, including Mr.

Elliott, subjected her to a hostile work environment on the bases of her race, sex, age,

and reprisal for prior protected activity. On or around September 30, 2019, Ms.

Gonsalves filed a formal complaint of discrimination regarding the same.

36.    Ms. Gonsalves did not include the aforementioned sexual harassment and drinking on

the job in her 2019 EEO complaint because she was fearful of immediate reprisal

from Mr. Elliott, who had and still has significant power and authority within the

Agency.

37.    After lengthy proceedings before an AJ at the EEOC, Ms. Gonsalves withdrew her

request for a hearing before the EEOC and requested a Final Agency Decision, which

Defendant issued on May 31, 2022, finding no discrimination.

*The Discriminatory and Retaliatory Harassment of Ms. Gonsalves Continued from 2020 –*

*2023*

38.    During the pendency of Ms. Gonsalves's complaint, Defendant began retaliating

against her for participating in those protected activities. For example, starting in 2020,

Ms. Smith accused Ms. Gonsalves of harassment without evidence (*i.e.*, alleging that

unnamed persons made unidentified allegations against Ms. Gonsalves and subjecting Ms.

Gonsalves to an investigatory meeting where Ms. Gonsalves was asked to report on what

she allegedly said to contractors based on unsubstantiated hearsay).

39.     In or around March 2020, as part of OHR's reorganization, OHR management assigned

four (out of five total) staff members to Ms. Gonsalves who were known throughout the

Agency as having performance and conduct issues. Employee No. 1 was a poor performer

who Mr. Elliott instructed Ms. Gonsalves to remove from federal service in 2016. This

employee was disgruntled due to lack of promotion. Employee No. 2 had documented

performance, conduct, and leave use issues. This employee was disgruntled before being

assigned to work for Ms. Gonsalves. Employee No. 3 had performance and conduct issues

that required her to be reassigned multiple times to other parts of the Agency before being

assigned to work for Ms. Gonsalves. This employee was disgruntled before being assigned

to work for Ms. Gonsalves. Employee No. 4 had a history of being unable to get along

with her previous managers, and on more than one occasion requested reassignment or

made allegations about her managers which resulted in them being removed from

management and/or Employee No. 4 being reassigned. This employee also applied for Ms.

Gonsalves's job as the Branch Chief, Performance, Reasonable Accommodation, and

Worklife, and was unhappy when Ms. Gonsalves was selected for it over her.

40.     On or around August 15, 2022, Ms. Smith directed Ms. Gonsalves to submit medical

documentation to substantiate Ms. Gonsalves's request to use four days of sick leave

while simultaneously allowing a Caucasian member of Ms. Gonsalves's staff to use

five days of COVID-19 (administrative) leave without requiring that employee to

submit medical documentation, during the same pay period.

41.     On or around August 25, 2022, Ms. Smith told Ms. Gonsalves during her midyear

review that she had concerns with her performance. However, Ms. Smith was unable

to provide any examples to support her allegation.

42.     From January – May 2023, Mr. Reinhold refused to provide Ms. Gonsalves with the resources she needed to perform her job (*e.g.*, not allowing her to use a detailee to help with closing out the 2022 performance cycle due to being short-staffed). Mr. Reinhold required Ms. Gonsalves to perform this labor intensive task for approximately 5,000 employees with no help from any staff, who should have been performing this task, in addition to performing her other duties.

43.     Defendant's retaliatory efforts significantly increased after Ms. Gonsalves's complaint was closed in May 2022. From January – March 2023, Mr. Reinhold pressured Ms. Gonsalves into closing a harassment complaint she filed against another Caucasian female (a manager) who had formerly worked in OHR with Ms. Gonsalves. In late 2018, after the Caucasian female manager was promoted to a new position, she initiated a campaign of harassment against Ms. Gonsalves by escalating every issue related to the performance management program to Ms. Gonsalves's then-manager, Ms. Smith, in 2020, without giving Ms. Gonsalves and her team an opportunity to address any potential issues or questions. This employee did not engage this way with or about Caucasian managers.

44.     In 2022, Ms. Gonsalves complained to Ms. Smith that she believed the employee was doing this in an effort to harass her. Ms. Smith referred Ms. Gonsalves's complaint to the Agency's antiharassment program, which initiated an investigation. Mr. Reinhold did not conduct a thorough investigation of Ms. Gonsalves's allegations against this employee nor did he inform Ms. Gonsalves of the outcome of the investigation.

45.     In or around February 2023, Mr. Reinhold did not select Ms. Gonsalves to serve as

the Acting Assistant Director, TRG, despite her many years of experience successfully managing people in federal organizations of various sizes.

46.     On May 5, 2023, Mr. Reinhold informed Ms. Gonsalves that he had initiated an administrative investigation into her conduct without telling her the allegations that were made against her or who made them, thereby preventing Ms. Gonsalves from being able to defend herself during the investigation.

47.     Further, Mr. Reinhold referred the investigation to be conducted by Mr. Elliott's office.

48.     Mr. Elliott has a reputation in the Agency as unfairly targeting minorities for disciplinary action, including handling the removals/terminations of minorities whom he did not supervise and were not in his chain of command.  Despite that fact, in or around December 2023, Defendant named Mr. Elliott as the head of its antiharassment program – which itself has a chilling effect on employees reporting harassment.

49.     Mr. Elliott's subordinate employee, Joseph Sullivan, conducted the investigation into Ms. Gonsalves. Another of Mr. Elliott's subordinate employees, Kate McHale, was present during the interviews that took place in June and December 2023 and took notes. During the investigation, Mr. Sullivan presented Ms. Gonsalves with a document that had been altered by Defendant. When Ms. Gonsalves's attorney inquired about who altered the document and why, Mr. Sullivan stated that he did not know the answer to either of those questions. He continued with the interview.

50.     Further, Mr. Sullivan and Ms. McHale failed to ask Ms. Gonsalves any follow up questions about her allegations that Agency employees had been drinking alcohol during work hours. Ms. McHale was one of the employees who used to drink alcohol in the office and at the bar with Mr. Elliott and others during work hours.

51.    Although Defendant would not tell Ms. Gonsalves the allegations that formed the basis for the administrative investigation, the nature of the questions Mr. Sullivan asked demonstrated that Mr. Reinhold did not have sufficient basis to open an administrative investigation into Ms. Gonsalves. All of the actions Mr. Sullivan asked Ms. Gonsalves about were common management practices that even Mr. Reinhold uses.

52.    Rather, it was simply a fishing expedition to try to find a reason to discipline Ms. Gonsalves, which Mr. Reinhold never found.

53.    On April 6, 2023, Mr. Reinhold asked Ms. Gonsalves to work on her day off.

54.    On or about June 23, 2023, Mr. Reinhold did not select Ms. Gonsalves for the Assistant Director, TRG position for which she applied and was immensely qualified.

55.    Beginning in or around July 2023, two attorneys in Defendant's Office of General Counsel (OGC), Michelle Englar and Christina Cotter, refused to perform their duties as advisors, and ethical obligations as attorneys in general, to Ms. Gonsalves, who was a manager at the time, when she sought their guidance and assistance to correct the performance and behavior of Employee No. 4. Ms. Englar and Ms. Cotter were each hired by, and are friends with, Mr. Elliott.

56.    As background, on March 21, 2019, Employee No. 4 yelled at Ms. Gonsalves, became very animated (enlarged eyes), and told Ms. Gonsalves that she had more experience than Ms. Gonsalves when they were discussing a reasonable accommodation case. Ms. Gonsalves informed Mr. Elliott of this interaction with Employee No. 4 via email on March 22, 2019.

57.    Beginning at least in or around October 2019, Ms. Englar had been aware that Employee No. 4 had performance and conduct issues that needed to be addressed. Ms.

Englar advised Ms. Gonsalves to document those issues to support potential future actions against the employee, if necessary.

58.     However, Ms. Gonsalves did not take any formal action to correct Employee No. 4 at that time because the office was short-staffed, and Ms. Gonsalves needed Employee No. 4 to perform the work, even though Employee No. 4's work was not very good.

59.     In or around November 2022, Ms. Englar told Ms. Gonsalves that she was going to have to deal with Employee No. 4's performance because it had been a problem for a long time. Ms. Englar and Ms. Gonsalves also exchanged emails in early 2023 regarding Employee No. 4 and had agreed to address the conduct issues.

60.     After Mr. Reinhold informed Ms. Gonsalves that he initiated an administrative investigation into unidentified allegations against her in May 2023, Ms. Gonsalves forwarded him email communications on June 24, 2023 (dating back to 2019) between herself and Ms. Englar regarding Ms. Englar being supportive of Ms. Gonsalves taking action against Employee No. 4 to address her performance and conduct issues.

61.     As of July 2023, Ms. Englar pivoted and told Ms. Gonsalves that she refused to help her take any action to address Employee No. 4's performance and conduct issues.

62.     Ms. Cotter, Assistant General Counsel for Labor/Employment, supported Ms. Englar's efforts to shirk her responsibility and ethical obligation to provide Ms. Gonsalves with sound advice, even after Ms. Gonsalves submitted documentary evidence to Ms. Cotter to support that Ms. Englar was aware of Employee No. 4's performance and conduct issues.

63.     In addition to OHR management harassing and discriminating against Ms. Gonsalves,

their behavior signaled other employees that they could also harass, belittle, and demean her. For example, from 2020 – 2023, a Caucasian male employee who was dissatisfied with his reasonable accommodation, sent emails to various Agency employees in which he called for the removal of Ms. Gonsalves from her position, made false allegations about her involvement in the reasonable accommodation process, called for investigations of her, called her incompetent and ineffective, and used demeaning language when referring to her. This employee never communicated with or about any of the Caucasian employees in OHR in this manner. When Ms. Gonsalves reported this to Mr. Reinhold, he did not take any action to address this employee's behavior.

64.   In or around April 2020, a Caucasian female employee yelled at Ms. Gonsalves in the presence of Agency employees and managers. When Ms. Gonsalves reported this behavior to Mr. Reinhold, he attempted to justify this employee's actions rather than address them.

*Additional Protected Activity: Ms. Gonsalves Filed Another EEO Complaint in June 2023*

65.   As a result of the Agency's continued harassment from 2020 – 2023, Ms. Gonsalves filed an informal discrimination complaint with Defendant's OEEO on June 19, 2023, alleging that OHR management harassed and discriminated against her based on race, sex, and retaliation.

66.   Ms. Gonsalves filed a formal discrimination complaint regarding the same on August 3, 2023. Ms. Gonsalves has since amended her complaint with additional claims.

67.   Defendant has not yet completed its investigation of Ms. Gonsalves's complaint.

*The Discriminatory and Retaliatory Harassment of Ms. Gonsalves Continues After She Filed*

*the 2023 EEO Complaint*

68.    From July – September 2023, Ms. Colon gave Ms. Gonsalves unfounded and biased

feedback.  Within 60 days of supervising Ms. Gonsalves, and with little to no

knowledge of the work being performed, on September 19, 2023, Ms. Colon told Ms.

Gonsalves that she was aware of complaints from customers regarding the Extended

Situational Telework Program and that it was directly related to Ms. Gonsalves's

deflective and hands-off approach to managing.

69.    Ms. Colon directed Ms. Gonsalves to review numerous emails and forms which Ms.

Gonsalves's employee and contractors were responsible for reviewing and issuing.

70.    Starting in or around August 2023, Ms. Colon, in conjunction with Ms. Englar and

Ms. Cotter in OGC, prevented Ms. Gonsalves from exercising her supervisory

authority, and prevented Ms. Gonsalves from addressing issues of employee

misconduct and poor performance.

71.    On September 19, 2023 and again in December 2023, Ms. Colon instructed Ms.

Gonsalves to perform her own work as well as that of Ms. Gonsalves's subordinate

employees, who understood that they did not have to perform successfully or

maintain good conduct towards Ms. Gonsalves because OHR management was

targeting Ms. Gonsalves.

72.    On or about November 9, 2023, Mr. Reinhold removed major functions from Ms.

Gonsalves: Reasonable/Religious Accommodation, Deaf Interpreting Services, and

Extended Situational Telework programs, despite the fact that she successfully

performed them.

73.  That same day, Mr. Reinhold also removed an employee and contractors from Ms. Gonsalves's supervision.

74.  Ms. Gonsalves amended her discrimination complaint on or around November 13, 2023 to include these additional claims.

75.  After Mr. Sullivan interviewed Ms. Gonsalves in December 2023 for a second time as part of the Agency's administrative investigation, it became even more apparent that Defendant's goal was to find or fabricate a reason to start to discipline Ms. Gonsalves, and very likely ultimately remove her from federal service. This was evidenced by the fact that Mr. Sullivan presented Ms. Gonsalves with an altered document about which he wanted her to answer questions.

76.  However, when Mr. Reinhold could not find a legitimate reason to discipline Ms. Gonsalves, he simply removed her from her supervisory position on or about January 19, 2024 and reassigned her to work on unidentified "special projects."

77.  Mr. Reinhold claimed the reason was that Ms. Gonsalves's employees complained about her management style, which he described as "command and control" or too hands-on, which is in direct contradiction to Ms. Colon's complaint that Ms. Gonsalves was simultaneously too hands-off in her management style.

78.  Ms. Gonsalves amended her EEO complaint with that claim on or around January 19, 2024.

79.  After removing Ms. Gonsalves from management, Defendant continues to harass, discriminate and retaliate against Ms. Gonsalves. Most egregiously, on or about February 1, 2024, Ms. Gonsalves's current first-line supervisor, Ms. Bazemore, abused her authority as Ms. Gonsalves's supervisor and ordered Ms. Gonsalves, in

writing, to delete evidence related to Ms. Gonsalves's current complaint.

80. When Ms. Gonsalves objected and explained that she could not delete the information because it was evidence regarding her complaint, Ms. Bazemore doubled down and reiterated her order to Ms. Gonsalves to delete the information for alleged "business reasons."

81. On or around January 29, 2024, Ms. Bazemore directed Ms. Gonsalves to perform the duties of the staff members Ms. Gonsalves used to manage, and report on the status of those assignments to those same staff members although they no longer perform the work.

82. On February 6, 2024, Ms. Bazemore falsely accused Ms. Gonsalves of excessive leave usage and not being able to perform the essential functions of the job that Mr. Reinhold just reassigned her to on or around January 19, 2024. Ms. Gonsalves had only been in the job less than one month and Defendant is already manufacturing conduct and performance deficiencies to support additional unwarranted disciplinary actions against her.

83. On February 21, 2023, Ms. Gonsalves amended her discrimination complaint to include these issues, as well as the issues involving sexual harassment and drinking alcohol in the office and at the bar during work hours.

84. On or about March 22, 2024, Ms. Colon issued Ms. Gonsalves an unacceptable rating for the 2023 performance period. The rating was unjustified and is the first unacceptable rating Ms. Gonsalves has received since she began working for the federal government over 35 years ago.

85. On April 1, 2024, Ms. Gonsalves amended her complaint to include this issue.

86.     The Agency's actions have caused, and still are causing, Ms. Gonsalves significant

        harm, especially to her previously impeccable and untarnished 35-year federal career.

**COUNT 1**

87.     Ms. Gonsalves repeats and realleges the allegations set forth in the above paragraphs.

88.     Defendant subjected Ms. Gonsalves to unlawful discrimination on the bases of her

        race and sex by subjecting her to disparate treatment and removing her from her

        supervisory position.

89.     By and through its conduct, Defendant subjected Ms. Gonsalves to unlawful

        discrimination based on her race and sex in violation of Title VII of the Civil Rights

        Act of 1964.

90.     Ms. Gonsalves has sustained damages consisting of emotional distress, pain and

        suffering, harm to professional reputation, loss of future promotion/managerial

        opportunities, and diminished earning capacity, among other harm. Ms. Gonsalves's

        harm is continuing.

**COUNT 2**

91.     Ms. Gonsalves repeats and realleges the allegations set forth in the above paragraphs.

92.     Defendant subjected Ms. Gonsalves to unlawful discrimination on the bases of her

        race and sex by subjecting her to disparate treatment and issuing her an unacceptable

        rating for the 2023 performance period.

93.     By and through its conduct, Defendant subjected Ms. Gonsalves to unlawful

        discrimination based on her race and sex in violation of Title VII of the Civil Rights

        Act of 1964.

94.     Ms. Gonsalves has sustained damages consisting of emotional distress, pain

and suffering, harm to professional reputation, loss of future promotion/managerial opportunities, and diminished earning capacity, among other harm. Ms. Gonsalves's harm is continuing.

## COUNT 3

95.   Ms. Gonsalves repeats and realleges the allegations set forth in the above paragraphs.

96.   By and through its conduct, Defendant subjected Ms. Gonsalves to an unlawful hostile work environment based on her race and sex in violation of Title VII of the Civil Rights Act of 1964.

97.   Ms. Gonsalves has sustained damages consisting of emotional distress, pain and suffering, harm to professional reputation, loss of future promotion/managerial opportunities, and diminished earning capacity, among other harm. Ms. Gonsalves's harm is continuing.

## COUNT 4

98.   Ms. Gonsalves repeats and realleges the allegations set forth in the above paragraphs.

99.   Defendant subjected Ms. Gonsalves to unlawful retaliation by removing her from her supervisory position.

100.   By and through its conduct, Defendant subjected Ms. Gonsalves to unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

101.   Defendant acted with malice or reckless indifference to Ms. Gonsalves's rights.

102.   As a result, Ms. Gonsalves has sustained damages consisting of emotional distress, pain and suffering, harm to professional reputation, loss of future promotion/managerial opportunities, and diminished earning capacity, among other harm. Ms. Gonsalves's harm is continuing.

## COUNT 5

103.  Ms. Gonsalves repeats and realleges the allegations set forth in the above paragraphs.

104.  Defendant subjected Ms. Gonsalves to unlawful retaliation by issuing her an unacceptable rating for the 2023 performance period.

105.  By and through its conduct, Defendant subjected Ms. Gonsalves to unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

106.  Defendant acted with malice or reckless indifference to Ms. Gonsalves's rights.

107.  As a result, Ms. Gonsalves has sustained damages consisting of emotional distress, pain and suffering, harm to professional reputation, loss of future promotion/managerial opportunities, and diminished earning capacity, among other harm. Ms. Gonsalves's harm is continuing.

## COUNT 6

108.  Ms. Gonsalves repeats and realleges the allegations set forth in the above paragraphs.

109.  By and through its conduct, Defendant subjected Ms. Gonsalves to an unlawful hostile work environment based on retaliation in violation of Title VII of the Civil Rights Act of 1964.

110.  Ms. Gonsalves has sustained damages consisting of emotional distress, pain and suffering, harm to professional reputation, loss of future promotion/managerial opportunities, and diminished earning capacity, among other harm. Ms. Gonsalves's harm is continuing.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts contained in the Complaint.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against the Defendant on all Counts and award Plaintiff reinstatement to a comparable supervisory position; retroactive correction of her Official Personnel File (OPF) that removes any and all reference to the removal from her position; rescission of the unacceptable performance rating and issuance of an acceptable rating; compensatory damages in the amount of $300,000 for pain and suffering and emotional distress, or in an amount to be determined by a jury; pre- and post-judgment interest; costs; attorneys' fees; tax on any award; and any such other relief as is just and proper.

Date: April 22, 2024                                     Respectfully submitted,

                                                        /s/ *N. Campbell*
                                                        Nekeisha Campbell [DC Bar No. 1754385]
                                                        Alan Lescht [DC Bar No. 441691]
                                                        Alan Lescht & Associates, P.C.
                                                        1825 K Street NW, Suite 750
                                                        Washington DC, 20006
                                                        T: (202) 315-1738
                                                        F: (202) 463-6067
                                                        nekeisha.campbell@leschtlaw.com
                                                        alan.lescht@leschtlaw.com
                                                        *Counsel for Plaintiff*