UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DIA GONSALVES**, <br><br> Plaintiff, <br><br> v. <br><br> **MARK UYEDA**, <br><br> Defendant. | Case No. 1:24-cv-1162 (TNM) |

### MEMORANDUM ORDER

Dia Gonsalves works for the Securities and Exchange Commission. She says it discriminated against her because of her race and sex. According to Gonsalves, she filed an internal complaint about the discrimination, but the SEC refused to address her concerns and instead embarked on a multi-year campaign of retaliation. So she sued its Chairman under Title VII.[1] Gonsalves brings eight counts premised on discrimination, retaliation, and a hostile work environment. The leadup to this case spans over six years and implicates a host of SEC employees and managers. The SEC moves to partially dismiss, asserting that four of the eight counts fail to state a claim. The SEC is correct on two. The Court dismisses Counts II and III—both premised on race and sex-based discrimination—because the Amended Complaint does not have the facts necessary to infer discriminatory animus. But the remaining counts survive. The Court denies leave to amend because Gonsalves's in-passing request to amend if the Court rules against her is procedurally deficient.

---

[1] Defendant Mark Uyeda is Acting Chairman of the SEC, replacing former Chairman Gery Gensler. Under Federal Rule of Civil Procedure 25(d), when a public officer sued in an official capacity vacates the office while the action is pending, his successor is automatically substituted as a party.

I.

In recounting the background of this case, the Court accepts the facts in Gonsalves's Amended Complaint as true. *See Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023). Gonsalves is an African American woman who has worked for the SEC since July 2016. Am. Compl., ECF No. 15, ¶ 2. Over her three-decade career as a federal employee, she has served in various capacities including a decade in management. *Id.* ¶ 3. Before this job, she has never had disciplinary issues and always received positive performance evaluations. *Id.*

But Gonsalves's time at the SEC has not been smooth sailing. She felt her managers discriminated against her because of her race and sex. *Id.* ¶ 5. So she expressed her concerns in an informal complaint with the SEC's Office of Equal Employment Opportunity in June 2019. *Id.* After she converted her complaint to a formal one, her allegations marched their way through an investigation and hearing before an Administrative Law Judge at the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶¶ 5, 7. The EEOC sided with the SEC in May 2022 and found no discrimination. *Id.* ¶ 7.

But things did not end there. While her formal complaint was being investigated, Gonsalves felt the SEC began retaliating against her. *Id.* ¶ 8. And the mistreatment only escalated after the EEOC sided with the SEC. *Id.* ¶ 9. So Gonsalves filed another informal complaint in June 2023. *Id.* ¶ 15. She converted it to a formal complaint in August 2023, but the investigation was never finalized. *Id.* After 180 days passed and her administrative remedies were exhausted, she filed this lawsuit. *Id.* ¶¶ 15–16. With that general timeline established, the Court turns to Gonsalves's specific allegations.

Gonsalves's first-line manager from 2017–20 was a Caucasian man. *Id.* ¶ 18. She contends that her boss and his subordinates "frequently" drank in the office or at local bars

during work hours.  *Id.* ¶ 23.  Once in 2018, her manager "forced" Gonsalves to attend a work meeting at a local bar.  *Id.* ¶ 27.  He proceeded to "bully" her into drinking.  *Id.*  She also claims she saw him come to work drunk one day in 2020.  *Id.* ¶ 28.

Gonsalves recounts being sexually harassed by coworkers in this same timeframe as well. *Id.* ¶ 30.  She says one male coworker made "almost daily comments about his desire to have sexual intercourse" with her.  *Id.*  He would also ask inappropriate questions about Gonsalves's romantic life.  *Id.* ¶ 31.  Her manager heard at least one of these comments but did not stop the behavior.  *Id.* ¶ 32.  In another instance, a different male coworker hugged her and "grabbed her left buttock" at a work party.  *Id.* ¶ 34.  Gonsalves included none of these allegations in her original 2019 discrimination complaint, purportedly because she feared immediate reprisal from her then-manager.  *Id.* ¶ 36.

In March 2020, the section Gonsalves worked in was reorganized, leading to a change in leadership.  *Id.* ¶¶ 19–20.  As part of the restructuring, the SEC assigned Gonsalves five subordinates.  *Id.* ¶ 45.  Four the five were known for having "performance and conduct issues." *Id.*  Gonsalves contends the SEC gave her these employees to "set [her] up for failure."  *Id.*

Gonsalves also got a new first-line manager in the reorganization—an African American woman who supervised her from March 2020 until January 2023.  *Id.* ¶ 20.  Shortly after taking over, this manager accused her of harassment without providing Gonsalves any evidence.  *Id.* ¶ 44.  In 2022, the manager also made Gonsalves submit medical documentation when using four days of sick leave, without requiring one of Gonsalves's Caucasian coworkers to submit documentation for similar leave.  *Id.* ¶ 46.  Her manager also expressed concerns with Gonsalves's performance during a midyear review in 2022 but did not provide examples of

3

Gonsalves's supposed shortcomings. *Id.* ¶ 47. Again, the manager did not treat Caucasian male employees this way, or employees who have not filed discrimination complaints. *Id.* ¶ 47.

Gonsalves's second-line supervisor also allegedly discriminated against her. From January through May 2023, he refused to provide Gonsalves the resources she needed to perform her job. *Id.* ¶ 48. Yet he did provide some of her Caucasian male coworkers with additional resources, including staff. *Id.* ¶¶ 49–50. She believes this disparity was another intentional step designed to sabotage her job performance. *Id.* ¶ 48. In early 2023, the same second-line supervisor also pressured her into closing a harassment complaint she had filed against one of her Caucasian managers. *Id.* ¶ 51. He did not properly investigate her complaint when she lodged it in 2022 either. *Id.* ¶ 52.

The trouble continued in February 2023 when her second-line supervisor did not select her for promotion, despite her experience. *Id.* ¶ 53. He declined to promote her a second time in June 2023 and selected a less qualified woman for the job. *Id.* ¶ 62. And in May 2023, the same supervisor launched an administrative investigation into her conduct but did not tell her why. *Id.* ¶ 54.

But it was not just her supervisors discriminating against her. She alleges discrimination from two attorneys in the SEC's Office of General Counsel ("OGC") too. *See id.* ¶¶ 63–67; 69–70. Gonsalves went to the OGC attorneys to discuss one of her employees who was having performance issues. *See id.* The first attorney was initially helpful but then pivoted and "refused to help" Gonsalves. *Id.* ¶ 69. The other attorney—a supervisor—supported the first attorney's behavior, which Gonsalves alleges was discriminatory. *See id.* ¶ 70. She alleges that the OGC did not treat Caucasian male employees this way, or employees who have not filed discrimination complaints. *Id.*

All of this prompted Gonsalves to file the second informal discrimination complaint in June 2023 with the SEC. *Id.* ¶ 73. She converted it to a formal complaint in August 2023 and made additional amendments after that. *Id.* ¶ 74.

Yet the alleged retaliation and discrimination persisted. Gonsalves's first-line supervisor changed twice in 2023—once in February and again in July when a Caucasian woman named Lauren Colon took the role. *Id.* ¶ 21. In the second half of 2023, Colon gave her "unfounded and biased feedback." *Id.* ¶ 76. Several times, she also made Gonsalves perform work that should have been done by Gonsalves's subordinates. *Id.* ¶¶ 77, 79. More, Colon allegedly worked with the two OGC attorneys to prevent Gonsalves from "exercising her supervisory authority" and addressing employee performance issues. *Id.* ¶ 78.

Gonsalves's situation continued to spiral after that. In November 2023, her second-line supervisor removed multiple major functions and employees from her job purview. *Id.* ¶¶ 80–81. Gonsalves amended her discrimination complaint several days later to reflect this. *Id.* ¶ 82. The final blow to her managerial authority came in January 2024. *Id.* ¶ 84. Without any "legitimate reason to discipline" Gonsalves, her second-line supervisor removed her from her management position and reassigned her. *Id.* Gonsalves again updated her discrimination complaint. *Id.* ¶ 86. The Amended Complaint Gonsalves filed in this Court lists Caucasian men and women who, according to Gonsalves, were allowed to remain in management roles despite substantiated misconduct. *Id.* ¶¶ 87–92.

Gonsalves's also recounts issues with her most recent first-line supervisor—an African American woman named Shalisha Bazemore. *See id.* ¶¶ 22, 93. These incidents all occurred in 2024. In January, Bazemore made Gonsalves perform the duties of the employees Gonsalves used to manage and even made her report to them. *Id.* ¶ 95. In February, she "ordered Ms.

5

Gonsalves, in writing, to delete evidence related to [her] current complaint." *Id.* ¶ 93. That same month, Bazemore "falsely accused" Gonsalves of taking excessive leave and not being capable of performing essential job functions. *Id.* ¶ 96. Gonsalves once more amended her discrimination complaint to add these issues, though she also added for the first time the circa 2017–2020 sexual harassment and day drinking incidents. *Id.* ¶ 97.

Then, in March 2024, her former supervisor Colon gave her an "unacceptable" rating for her job performance in 2023—the first such rating Gonsalves had ever gotten. *Id.* ¶ 98. She added this to her discrimination complaint. *Id.* ¶ 100.

Her formal complaint was not resolved within 180 days, giving Gonsalves the ability to sue in federal court. *See* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.407(b). She filed this eight-count Title VII case against the SEC in August 2024. Am. Compl. at 26.

Count I alleges the SEC discriminated against her based on race and sex when it removed her from her supervisory position. *Id.* ¶¶ 105–08.

Count II alleges the SEC discriminated against her based on race and sex by giving her an unacceptable rating for her job performance in 2023. *Id.* ¶¶ 109–12.

Count III alleges the SEC created a hostile work environment based on her race and sex. *Id.* ¶¶ 113–15.

Count IV alleges the SEC retaliated against her by removing her from her supervisory position. *Id.* ¶¶ 116–20.

Count V alleges the SEC retaliated against her by giving her an unacceptable rating for her job performance in 2023. *Id.* ¶¶ 121–25.

Count VI alleges the SEC created a hostile work environment based on retaliation. *Id.* ¶¶ 126–28.

Count VII alleges the SEC discriminated against her based on race and sex by not promoting her. *Id.* ¶¶ 129–32.

Count VIII alleges the SEC retaliated against her by not promoting her. *Id.* ¶¶ 133–37.

The SEC filed a partial motion to dismiss, and Gonsalves responded by amending her Complaint. *See* ECF Nos. 9, 12. The Court then denied the SEC's motion as moot. Order, ECF No. 13. The SEC responded to the Amended Complaint with another partial motion to dismiss. Def.'s Partial Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 16. It challenges Counts I, II, III, and VI under Rule 12(b)(6) saying those counts fail to state a claim.[2] *Id.* at 1–3. The SEC also contends that any incidents prior to May 5, 2023, are time-barred and cannot support a claim. *Id.* And it asks the Court to strike many paragraphs of the Amended Complaint based on an assertion of attorney-client privilege involving the two OGC attorneys. *Id.* at 21–24. The motion is now ripe for consideration. The Court has subject-matter jurisdiction over Title VII claims under 28 U.S.C. § 1331.

## II.

To survive a motion to dismiss, a complaint must state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). While a court must accept the facts in a complaint as true, it need not accept conclusory statements or "inferences that are unsupported by the facts." *Air Excursions*, 66 F.4th at 277 (cleaned up). "[J]udicial experience and common sense" also inform the decision on whether an allegation is plausible. *Iqbal*, 556 U.S. at 679. In the Title VII context, a complaint must create a plausible

---

[2] The SEC originally contested Counts VII and VIII too but withdrew those challenges. Gov't Reply, ECF No. 20, at 1 n.1.

inference that discrimination or retaliation motivated the challenged conduct. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015).

### III.

The SEC asserts that Counts I, II, III, and VI fail to state a claim. Mot. to Dismiss at 2, 13. It homes in on causation as the weak link for all four. *Id.* According to the SEC, the Amended Complaint offers no viable path to inferring that Gonsalves's alleged mistreatment happened because of her race, sex, or protected activity. *Id.* at 2.

### A.

Before digging into causation, the Court rejects the SEC's efforts to chip away at Gonsalves's facts. The SEC asserts that Gonsalves failed to administratively exhaust many allegations comprising her hostile work environment claim in Count III. Mot. to Dismiss at 12; *see also Crawford v. Duke*, 867 F.3d 103, 105 (D.C. Cir. 2017) (discussing Title VII's robust exhaustion requirements and deadlines). It asks the Court to strike multiple paragraphs because the allegations are time barred and cannot be considered. Mot. to Dismiss at 11–12. The SEC is probably right, but the paragraphs it focuses on do not alter Court's bottom-line plausibility determinations. Thus, while exhaustion may come to shape the factual contours at summary judgment, the Court need not resolve it here. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (exhaustion is not a jurisdictional prerequisite for Title VII claims).

The SEC also moves to strike multiple paragraphs in the Amended Complaint based on attorney-client privilege. Mot. to Dismiss at 21–24. But most of the paragraphs simply recount facts involving attorneys. The attorney-client privilege "extends only to *communications* and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). While the SEC's position has some merit, it fails to meet the high bar required to invoke the "disfavor[ed]" and "extreme

measure" of striking allegations in a complaint. *Stanbury L. Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). The Court now turns to the sufficiency of the Amended Complaint, considered in its entirety.

**B.**

First up are Gonsalves's claims involving discrete acts of discrimination. In Count I she alleges race and sex-based discrimination because she was removed from her position as a supervisor. In Count II, she alleges race and sex-based discrimination because she received a poor performance rating.

A plaintiff alleging specific acts of discrimination must plead facts showing that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). The SEC disputes only the third requirement for both counts. *See* Mot. to Dismiss at 13.

**1.**

For Count I, the SEC says the factual pleadings are not enough to infer discriminatory animus in its decision to remove Gonsalves from her supervisory position. *See* Gov't Reply, ECF No. 20, at 5–6. The Court sees it differently. The facts are sparse, but they are enough to avoid dismissal. Gonsalves has specifically identified other managers who do not share her race and sex who were allowed to remain managers despite documented misconduct. Am. Compl. ¶¶ 87–92. Disparate treatment between similarly situated employees is not always a smoking gun, but it is a big enough clue to infer possible discrimination. *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014).

9

Anticipating this, the SEC takes aim at Gonsalves's comparator evidence. It asserts that the facts are too limited to find that Gonsalves and her proposed comparators were similarly situated. Gov't Reply at 6. But on a motion to dismiss, the outcome turns on plausibility, not a final decision on similarity.

Comparator evidence is not mandatory at the pleading stage. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 622 (D.C. Cir. 2023). But if a complaint relies solely on similarly situated comparators to establish an inference of discrimination, the comparison must be plausible. *See, e.g.*, *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (affirming dismissal where the complaint "fail[ed] to establish a plausible basis for believing [the plaintiff and a comparator] were actually similarly situated"), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). Still, the ultimate resolution of whether two employees are similarly situated is "ordinarily a question of fact for the jury." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1116 (D.C. Cir. 2016).

At this point, Gonsalves need only "allege some facts to ground a reasonable inference that she was in fact similarly situated to comparator employees." *Owens v. Thompson*, 23-cv-662, 2024 WL 1328461, at *2 (D.D.C. Mar. 28, 2024) (cleaned up). She has done so by pleading that she and her comparators are all SEC managers with disciplinary issues. She was removed from her position while her comparators were not, which supports an inference of discrimination. *See Brown*, 774 F.3d at 1022. At the pleading stage, this suffices to render Count I plausible.

**2.**

Count II alleges the SEC discriminated against Gonsalves based on her race and sex by giving her a poor job performance rating for 2023. The SEC launches the same barrage against the causal link as in Count I. *See* Mot. to Dismiss at 13. But this time it hits the mark.

Gonsalves's first-line supervisor Colon—a Caucasian female—gave her an "unacceptable" performance rating. Am. Compl. ¶¶ 21, 98. In her opposition brief, she concludes the rating was "based on her race and sex." Pl.'s Opp'n ("Opp'n"), ECF No. 18, at 15. But her Amended Complaint does not support this inference. There, Gonsalves states that the rating was "predicated on the false narrative that she was unable to effectively manage her staff." Am. Compl. ¶ 99. This may show that Colon either relied on or crafted fallacious information to unfairly give her a bad performance evaluation. But it does not suggest she did so because of Gonsalves's race or sex. For instance, there is no sign that Colon ever made inappropriate comments about race or sex that would hint at a dubious motivation. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (noting that plaintiffs may "rely on bits and pieces of information to support an inference of discrimination." (cleaned up)). And, while in no way dispositive, Gonsalves's claim of sex-based discrimination is particularly weak here because Gonsalves and Colon are both women. *Cf. Aka v. Wash. Hosp. Cntr.,* 156 F.3d. 1284, 1291 (D.C. Cir. 1998) (noting fact that hiring officer was member of same minority group as plaintiff may weaken inference of discrimination); *Battle v. Mnuchin,* 480 F. Supp. 3d 198, 206 (D.D.C. 2020) (same). Nor does Gonsalves does identify any specific individuals of a different race or sex who her supervisor rated more favorably.

Gonsalves does recount race-based comments made by two other SEC employees in 2018 and 2019, but they do not move the needle. Am. Compl. ¶¶ 102–03. The comments broadly

suggested that the SEC as an institution has a habit of not treating African American women well. But neither of those individuals was her supervisor or had any apparent involvement with Gonsalves's performance evaluation years later. So the comments do not create an inference that *her supervisor* had untoward motives when evaluating Gonsalves's job performance. *See Morris v. McCarthy*, 825 F.3d 658, 669 (D.C. Cir. 2016) ("[A]n isolated race-based remark unrelated to the relevant employment decision" is not enough by itself to create an inference of discrimination.).

Simply put, the facts alleged are insufficient for the Court to infer any discriminatory animus. Gonsalves's conclusion to the contrary in her opposition brief is an unsupported inference that the Court need not accept. *Air Excursions*, 66 F.4th at 277. At most, the Court can surmise Gonsalves was unfairly given a bad performance evaluation premised on inaccurate information. Her race and sex play no role in that inference though. Gonsalves has thus not plausibly stated a Title VII claim in Count II and the Court will dismiss it.

## C.

Move now to Gonsalves's hostile work environment claims. Count III alleges a hostile work environment based on race and sex, while Count VI alleges the same based on retaliation.

"Hostile environment claims are different in kind from discrete acts" because "their very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). While discrete acts focus on a single employment decision, hostile work environments usually stem from "the cumulative effect of [multiple] individual acts." *Id.* The acts must be the sort of "extreme" behaviors that are so odious they "amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In other

words, the conflict must be something more than the "ordinary tribulations of the workplace." *Id.*

But plaintiffs cannot throw every objectionable act at the wall to see what sticks. The challenged behaviors must be "adequately connected" and "part of the same unlawful employment practice" rather than a cobbled-together "array of unrelated discriminatory . . . acts." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). Acts are more likely to be part of the same unlawful practice when they "involve the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers." *Id.* at 1251 (cleaned up).

### 1.

In Count III, Gonsalves alleges the SEC created a hostile work environment based on her race and sex. She generally claims that "all of [the] actions identified in her amended Complaint were connected to her race and sex." Opp'n at 16. But the facts do not bear this out.

Count III falters because Gonsalves treats it as an unfocused catch-all for her grievances. *See* Opp'n at 16–17. She invokes a constellation of unrelated incidents sprinkled across six years. Her allegations implicate various people and highlight different types of adverse treatment. *See id.* For example, she contends she was assigned employees with performance issues in 2020; one of her managers required her to submit medical documentation for an absence in 2022; another manager targeted her with an administrative investigation in 2023; and two OGC attorneys refused to help her with employee discipline in 2023. *Id.* Given the varying nature and timeframes of these events, they are not "adequately connected" and cannot be daisy chained together into a single unlawful employment practice. *Baird*, 662 F.3d at 1252 (D.C. Cir. 2011).

Moreover, even if the incidents were sufficiently related, the Court cannot infer that Gonsalves's sex and race caused them. She tries to apply a blanket inference of discrimination by pointing to two comments her coworkers made. Opp'n at 17–18. In 2018, one said that "people who look like [Gonsalves] don't last very long around here." Am. Compl. ¶ 102. And another said in 2019 that the SEC has a habit of "parking African American females at the SK-15 level and treating them poorly." *Id.* ¶ 103. But these comments came years beforehand from coworkers with no apparent involvement in the later adverse actions. It is not plausible to infer that these comments reveal a discriminatory animus in the later behaviors of others. *See Morris*, 825 F.3d at 669. Other than Gonsalves's own unsupported conclusions, the Amended Complaint lacks the necessary factual support to infer her race and sex[3] had anything to do with her mistreatment. Gonsalves has not plausibly alleged discrimination in Count III so the Court will dismiss it.

**2.**

Count VI alleges that the SEC created a hostile work environment in retaliation for Gonsalves's protected complaint about discrimination. Again, the SEC challenges the causal inference.[4] *See* Mot. to Dismiss at 19–20. Gonsalves fares better here.

---

[3] Gonsalves also says two coworkers sexually harassed her but concedes those allegations are "untimely and unexhausted." Opp'n at 5. Untimely allegations can still contribute to a hostile work environment claim but only when "adequately linked" to other acts that *are* timely raised. *See Baird*, 662 F.3d at 1251. Gonsalves's sexual harassment allegations are unrelated to the other incidents in Count III, so they do not save this Count.

[4] The SEC also maintains that the conduct was neither severe nor pervasive. *See* Mot. to Dismiss at 20–21. But this is a "mixed question of law and fact." *Barbour v. Browner*, 181 F.3d 1342, 1348 (D.C. Cir. 1999). The parties disagree on which facts are properly before the Court, so the issue is better left for summary judgment when the Court can fully consider the facts.

Much like discrimination, retaliatory behaviors can create a hostile work environment if they are severe and pervasive. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). Temporal proximity between an employer's knowledge of the protected activity and the adverse employment actions can give rise to an inference of retaliation. *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 540 (D.C. Cir. 2024). But if "temporal proximity is the only evidence of causality," the proximity "must be very close." *Id.* (cleaned up). There is no brightline rule on what qualifies as "very close." *See id.* Generally though, three to four months between the protected activity and the alleged retaliation is a close enough connection to infer causation. *Id.*

The Amended Complaint does not always delineate which incidents arose from discrimination and which stemmed from retaliation. But there is a definite cluster of allegedly retaliatory actions in the 2023–24 timeframe. *See* Am. Compl. ¶¶ 76–85, 93–98. Among other things, Gonsalves contends that two of her first-line supervisors—Colon and Bazemore—created a hostile work environment by retaliating against her for her EEOC complaint. She alleges they both gave her negative performance evaluations, made her do work beneath her position, and accused her of being ineffective at her job shortly after learning of her protected activity. Am. Compl. ¶¶ 76–79, 95–98. These incidents cover a roughly eight-month period, involve Gonsalves's supervisors, and recount similar types of adverse employment actions. So they have sufficient connection to form a cogent hostile work environment claim. *Baird*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

The Amended Complaint also allows an inference of retaliation based on temporal proximity. Colon learned of Gonsalves's protected activity in July 2023, Am. Compl. ¶ 40, and allegedly began retaliating against her starting that same month, *id.* ¶ 76. Bazemore learned of the protected activity in November 2023, *id.* ¶ 41, and allegedly began retaliating against

15

Gonsalves two months later in January 2024, *id.* ¶ 95.  This proximity fits comfortably into the three-to-four-month window discussed in *Spence* and is close enough to sustain a retaliation claim.  109 F.4th at 540.

Still, the temporal link alone may not be enough to ferry these allegations beyond summary judgment.  *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C. Cir. 2012) (noting that temporal proximity alone cannot overcome an employer's legitimate explanation for an adverse employment action at summary judgment).  But that is an issue for another day.  Gonsalves has pled sufficient facts in Count VI to plausibly allege a hostile work environment created by *some* of her supervisors taking *some* potentially retaliatory actions.

### D.

Gonsalves requests leave to amend her Complaint a second time should the Court rule against her.  Opp'n at 1.  Courts should "freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But an "informal request" for leave to amend in an opposition brief "does not satisfy the requirements of [the] Local Rules."  *IMAPizza, LLC v. At Pizza Ltd.*, 965 F.3d 871, 876 (D.C. Cir. 2020).  Local Rules 7(i) and 15.1 require a party to file "a motion for leave to amend and provide a copy of its proposed amended complaint," neither of which Gonsalves did.  *Id.* at 875.  Instead, she included a one-sentence, contingent request in her brief.  Because of this procedural infirmity, the Court has no amended pleading to review and cannot assess whether another amendment would be proper.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing the relevant considerations).  So the Court denies leave to amend.

### IV.

For these reasons, it is

**ORDERED** that Defendant's [16] Partial Motion to Dismiss is **GRANTED** as to Counts

II and III and **DENIED** as to Counts I and VI.

    **SO ORDERED.**


Dated: February 13, 2025                                TREVOR N. McFADDEN
                                                                       United States District Judge